UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **KENLY ROSE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-3295** |
| **BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY** | **SECTION "F"(6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon further review of the record, after issuance of its order for supplementation on November 13, 2008, the Court finds that the state court record produced by the State is adequate to resolve the petition.[1] The Court also has determined that a federal evidentiary hearing is unnecessary. *See* 28

---

[1] Rec. Doc. No. 10. Neither party responded to the order.

U.S.C. § 2254(e)(2).[2] For the following reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

I.   FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Kenly Rose, is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3] On April 6, 1995, Rose, along with co-defendants Je'Barr Locure and William Locure, was indicted by a grand jury in Orleans Parish for the second degree murder of Hung Hoang.[4] The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> On 3 February 1995, Sergeant Jeneris Sanders investigated the murder of Hung Hoang in the thirty-one hundred block of Kent Drive, in eastern New Orleans. The officer received a call about the shooting at approximately 3:30 a.m. When he arrived on the scene, the victim was seated inside a burgundy 1988 Mazda 626 behind the driver's seat. The victim's head was resting on the head rest and a door board. All the vehicle's windows were up and the doors locked. Another officer smashed the rear passenger side window in order to gain entry to render aid to the victim. The victim was shot once in the chest. The weapon used was a thirty-eight caliber gun. The victim was pronounced dead at the scene. The crime lab was called in to process the scene.
> A tip from Crimestoppers provided defendant's name as a possible suspect. The tip was received twelve hours after the murder. The defendant and two others, Je'Barr and William Locure, were arrested for the murder. The information received indicated the Locure brothers were with the defendant when the defendant shot the

---

[2] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[3] Rec. Doc. No. 1. The state court records submitted by the state reflect that Kenly was occasionally spelled "Kenley."

[4] St. Rec. Vol. 1 of 4, Indictment, 4/6/95.

victim. Bottles of alcohol were found in the victim's car. No weapon was found on the victim or in his car.

Several weapons were seized in connection with the investigation after execution of a search warrant for a residence at 2801 Kent Drive. The weapons and the victim's car were processed for fingerprints. However, the crime lab was unable to obtain any fingerprints. Bullets were recovered from the victim's body during the autopsy. Je'Barr and William Locure gave statements to the officers after their arrests.

William Locure testified that at approximately 3:00 a.m. on 3 February 1995, he was hanging out with defendant and several others in the thirty-one hundred block of Kent Drive. The victim drove into the area and sought to sell alcohol for crack cocaine. The defendant spoke with the victim and told the victim to leave the area. At one point, defendant and three other men were standing around the victim's car. The defendant told the victim to leave and hit the victim in the head with a gun. The victim rolled up his window and everyone started walking away from the window. As William Locure was walking towards the apartments, he heard a gunshot. He did not look back. He ran off. Je'Barr was walking towards him as he was running away. He and Je'Barr left the area and went home.

William Locure stated that he saw the defendant on a daily basis. The defendant hung out in the same area as Locure. This witness was arrested on 7 February 1995. He gave a statement to the police officers after his arrest. Locure acknowledged prior convictions for theft and possession of marijuana. Furthermore, he stated that the victim drove a maroon Toyota, came into the area earlier that evening to buy cocaine, and was trying to sell alcohol for cocaine. Locure also revealed that the defendant had a chrome-colored gun. The witness admitted that he signed a memorandum of understanding with the state, in which he agreed to testify against the defendant in exchange for dismissal of all charges against him regarding this murder. On cross-examination, the witness revealed that he did not see the defendant pull the trigger.

Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner's Office, performed an autopsy on the victim. The victim had a fresh gunshot wound to the left side of his chest. The bullet went through the left lung, the heart and stopped below the right rib cage. The gunshot wound caused massive bleeding and was the cause of the victim's death. Glass fragments were found around the gunshot wound. Dr. McGarry also found an old bullet wound in the victim's back. The wound was approximately two years old. Bullets from both wounds were recovered. Both bullets were thirty-eight caliber. However, the bullet from the old wound was pure lead. The victim also had a cut wound across his sideburn near his cheek. This wound would be consistent with being hit with the butt of a gun or a heavy object.

The parties stipulated that Ruby Ory, a toxicologist, would testify that the victim's blood samples were negative for alcohol, barbiturates or benzdiazepenes. However, the victim's bile and vitreous fluid samples were positive for cocaine.

Officer John Ronquillo of the New Orleans Police Department executed a search warrant at 2801 Kent Drive on 7 February 1995. He was looking for a gun,

the weapon used in the shooting. Eight officers were involved in the search of the premises. In the front bedroom, they found a thirty-eight caliber Smith & Wesson, a thirty-eight caliber R & G revolver, and a box of .357 bullets. A nine millimeter weapon was found in another part of the house. No fingerprints were taken off of the weapons. The officers could not find any ownership papers for the weapons. 2801 Kent Drive was not the defendant's residence.

    Officer John Treadway, a senior firearms examiner with the Crime Lab, examined the three weapons and two thirty-eight caliber bullets seized at the Kent Drive address and the two bullets recovered from the victim's body. The bullets taken from the victim's body were fired from a revolver with a five right rifling, such as a Smith & Wesson, a Ruger or a late model Taurus revolver. The bullets could have been fired by a .357 magnum. There were not enough individual striations on the bullets for Officer Treadway to determine whether the bullets were fired from the Smith and Wesson retrieved from the Kent Drive address. The R & G thirty-eight caliber revolver did not function and had an eight right rifling.

    Je'Barr Locure testified he was walking toward his brother, William Locure, when Je'Barr noticed the victim in his vehicle. The victim sought to sell alcohol for cocaine. The defendant and three other men walked up to the victim's vehicle. The defendant stayed by the car after the other three men began walking away. The defendant and the victim got into an argument. The defendant hit the victim in the head with a gun and told the victim to leave the area. The victim started to roll up his window. At that point, the witness turned and began to walk home. The witness heard one gunshot and turned around. He saw the defendant next to the victim's car. The defendant was the only person by the vehicle. The witness did not see the victim with a weapon. The witness and his brother ran home after hearing the gunshot. The witness acknowledged two prior convictions for first degree robbery.

*State v. Rose*, 732 So.2d 761, 763-64 (La. App. 4th Cir. 1999); St. Rec. Vol. 1 of 4, pp. 2-5, Louisiana Fourth Circuit Opinion, 97-KA-2212, April 7, 1999.

On September 12, 1996, the State entered a nolle prosequi as to Je'Barr and William Locure.[5] The two men entered into an agreement with the State to testify at Rose's trial.[6]

---

[5]St. Rec. Vol. 1 of 4, Extract of Minutes, 9/12/96 (Je'Barr Locure); Extract of Minutes, 9/12/96 (Williams Locure).

[6]St. Rec. Vol. 1 of 4, Memorandum of Understanding, 9/12/96.

Rose was tried before a jury on March 31, 1997, and was found guilty as charged of second degree murder.[7] At a hearing held June 17, 1997, the state trial court denied Rose's motions for judgment of acquittal and for new trial.[8] The court also sentenced Rose to serve life imprisonment without benefit of parole, probation, or suspension of sentence.[9]

On direct appeal, Rose and his counsel raised four grounds for relief:[10] (1) insufficient evidence; (2) the trial court erred in denying defendant's motion for mistrial based on the State's display of unrelated weapons at trial; (3) the trial court erred in denying the defendant's motions for new trial, for post verdict judgment of acquittal, and to quash the indictment; and (4) (pro se) the trial court erred in allowing the Locure brothers to testify in exchange for the nolle prosequi of the charges against them and in exchange for something of value.

On April 7, 1999, the Louisiana Fourth Circuit affirmed the conviction and sentence finding no merit to Rose's claims.[11] The Court also refused his application for rehearing on

---

[7]St. Rec. Vol. 1 of 4, Trial Minutes (2 pages), 3/31/97; Jury Verdict, 3/31/97; St. Rec. Vol. 2 of 4, Trial Transcript, 3/31/97.

[8]St. Rec. Vol. 1 of 4, Sentencing Minutes, 6/17/97; Motion for Judgment of Acquittal, 4/18/97; Motion for New Trial, 4/18/97; Sentencing Transcript, 6/17/97.

[9]St. Rec. Vol. 1 of 4, Sentencing Minutes, 6/17/97; Sentencing Transcript, p. 4, 6/17/97.

[10]St. Rec. Vol. 1 of 4, Appeal Brief, 97-KA-2212, 4/24/98; Supplemental Pro Se Appeal Brief, 97-KA-2212, 12/11/98.

[11]*State v. Rose*, 732 So.2d at 761; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 97-KA-2212, 4/7/99.

May 14, 1999.[12] The Louisiana Supreme Court also denied without reasons Rose's timely[13] filed writ application on December 10, 1999.[14] The court also denied without reasons his application for reconsideration on November 27, 2000.[15]

Rose's conviction became final February 26, 2001, which was 90 days after the Louisiana Supreme Court's denial when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), *cert. denied*, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); *see also*, Fed. R. Civ. P. 6(a) and La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period).

On January 23, 2004, Rose, through counsel, filed a motion to obtain a copy of the grand jury transcript.[16] The record does not contain a ruling on this motion.[17]

---

[12]*Id.*, at 761; St. Rec. Vol. 1 of 4, 4th Cir. Opinion, 97-KA-2212, p. 10, 4/7/99; Application for Rehearing, 97-KA-2212, 4/19/99.

[13]Petitioner had 30 days from issuance of the appellate court's order to mail or file a writ application in the Louisiana Supreme Court. La. S. Ct. Rule X§5; La. Code Crim. P. art. 922. The postmark date of June 11, 1999, and the filing date of June 30, 1999, were obtained by the court from the office of the clerk of court for the Louisiana Supreme Court. The postmark date was within the prescribed period for filing after the rehearing application was refused.

[14]*State v. Rose*, 751 So.2d 244 (La. 1999). One justice would have granted the writ application. The record does not contain a copy of this order or the writ application itself.

[15]*State v. Rose*, 774 So.2d 988 (La. 2000). One justice would have granted the request.

[16]St. Rec. Vol. 3 of 4, Docket Master, entry dated 1/23/04.

[17]During the post-conviction hearing held November 10, 2004, the state trial court indicated that it had previously granted the motion and chose at the hearing to reverse itself and deny the motion as inappropriate. St. Rec. Vol. 3 of 4, Hearing Transcript, p. 22-25, 11/10/04. The reference to a ruling in 2003 on a transcript request, if accurate, would not alter the timeliness calculation made later in this opinion.

Rose's counsel, on June 21, 2004, filed an application for post-conviction relief, raising five grounds for relief:[18] (1) the grand jury selection process was unconstitutional; (2) La. Code Crim. P. art. 413(c) is an unauthorized local law; (3) the Louisiana Supreme Court's decision in *Deloch v. Whitley*, 684 So.2d 349 (La. 1996),[19] is not a proper procedural bar; (4) ineffective assistance of counsel for failing to file a motion to quash; and (5) the indictment was unconstitutional. After receipt of the State's opposition response, the state trial court denied the application at a hearing held on November 10, 2004, finding that it was untimely filed and otherwise procedurally barred.[20]

On January 6, 2005, Rose's counsel filed an untimely[21] writ application in the Louisiana Fourth Circuit seeking review of the trial court's ruling.[22] The Louisiana Fourth Circuit denied the application without reasons on March 23, 2005.[23]

---

[18] St. Rec. Vol. 3 of 4, Copy of Application for Post-Conviction Relief, 6/21/04; Docket Master, entry dated 6/21/04.

[19] In *Deloch*, the Louisiana Supreme Court held that defense counsel's failure to file a pretrial motion to quash waived the equal protection claim arising out of allegedly discriminatory selection of grand jury forepersons.

[20] St. Rec. Vol. 3 of 4, Hearing Transcript, p. 33, 11/10/04; Minute Entry, 11/10/04; *see also*, Response to Application for Post-conviction Relief, 10/7/04.

[21] Petitioner had 30 days from issuance of the trial court's order to file for review in the Louisiana Fifth Circuit. La. App. Rule 4-3; La. Code Crim. P. art. 922. *See*, St. Rec. Vol. 3 of 4, 4th Cir. Order, 2005-K-0036, 1/19/05; Memorandum in Support, undated.

[22] St. Rec. Vol. 3 of 4, 4th Cir. Writ Application, 2005-K-0036, 1/6/05.

[23] St. Rec. Vol. 3 of 4, 4th Cir. Order, 2005-K-0036, 3/23/05.

Rose's counsel also timely[24] filed a writ application with the Louisiana Supreme Court on April 22, 2005.[25] The court denied the application without reasons on June 24, 2005.[26]

## II. FEDERAL HABEAS PETITION

On June 26, 2006, Rose, through different counsel, filed a petition for federal habeas corpus relief in this court raising seven grounds for relief:[27] (1) the trial was unfair in violation of the Fifth Amendment and the Due Process Clause; (2) the evidence was insufficient to support the verdict; (3) a mistrial should have been declared when the State improperly sought to admit into evidence weapons which were not connected with this crime; (4) trial court should have allowed counsel to withdraw when conflict of interest arose; (5) new evidence of innocence arising from the affidavits of three witnesses, Nicky Wilson, Louis Henry and Larry Legania; (6) to the extent these witnesses were known, trial counsel was ineffective for failure to investigate and call these three witnesses at trial; and (7) the cumulative effect of the errors violated the Sixth and Fourteenth Amendments. Counsel for Rose also conceded in the petition that the sixth and seventh claims had not been presented to any state court prior to being brought before this federal court.[28]

---

[24] Petitioner had 30 days from issuance of the appellate court's order to mail or file a writ application in the Louisiana Supreme Court. La. S. Ct. Rule X§5; La. Code Crim. P. art. 922.

[25] St. Rec. Vol. 4 of 4, La. S. Ct. Writ Application, 05-KP-1048, 4/22/05.

[26] *State v. Rose*, 904 So.2d 722 (La. 2005).

[27] Rec. Doc. No. 1.

[28] Rec. Doc. No. 1, p. 14-15.

The State filed a response in opposition to the petition, arguing that the petition should be dismissed as untimely filed under federal law.[29]

III. GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[30] and applies to habeas petitions filed after that date. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA therefore applies to this petition, which was filed in this federal court by Rose's counsel on June 26, 2006.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As noted above, the State has raised the defense that the petition is not timely filed.

Although not addressed by the State, the petitioner concedes that, at the time of filing, he had not exhausted available state court remedies as to two of his claims. This lack of

---

[29]Rec. Doc. No. 9.

[30]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).

9

exhaustion, however, does not alter the fact that this petition is untimely filed, and it can be dismissed for that reason.

IV.   STATUTE OF LIMITATIONS

The AEDPA requires a petitioner to bring his § 2254 petition within one year of the date his conviction became final.[31]  *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001).  As noted below, the AEDPA provides other triggers for the calculation of this filing period, including the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence.  However, Rose has not asked for, nor can the court find, another basis to use as the start date of this period.

In addressing his sixth and seventh claims, Rose refers to the proposed testimony of the three witnesses, Wilson, Henry, and Legania, as "newly discovered."  However, by his

---

[31]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
    A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
    C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review;  or
    D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

own argument, he acknowledges that these three men, Wilson, Henry, and Legania, were known witnesses who were listed by the State, but not called at trial. Rose's current post-conviction counsel apparently did not obtain affidavits from two of these men until January of 2006. The delay in obtaining the information is not explained, in spite of the fact that Rose was represented by counsel at trial and throughout his post-conviction pursuits. Nevertheless, the men were known, potential witnesses at the time of trial in 1997. According to Rose, the names of these three witnesses were disclosed by the State and were not hidden from the defense. Although counsel labels the evidence "newly discovered," these witnesses are not new and there is no showing made that Rose is entitled to a different filing-date trigger under the AEDPA. Therefore, the AEDPA filing calculation will begin from the date the conviction became final.

Rose's conviction became final on February 26, 2001. Under a literal application of the statute, he had until February 26, 2002, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

First, the United States Supreme Court has held that the one-year statute of limitations period in Section 2244(d)(1) of the AEDPA may be equitably tolled only when the petitioner has pursued his rights diligently and rare or extraordinary circumstances exist which prevented timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v.*

*Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *Cousin*, 310 F.3d at 848.

Rose has not asserted any reason that might constitute rare or exceptional circumstances why the one-year period should be considered equitably tolled, and the court's review of the record reveals none that might fit the restrictive boundaries of "exceptional circumstances" described in prior decisions. *See United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000) ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended petitioner's deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

In addition to equitable tolling, the AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a <u>properly filed application for State post-conviction or other collateral review</u> with respect to the pertinent judgment or

12

claim is pending <u>shall not be counted</u> toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does <u>not</u> create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. *Flanagan*, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. *Duncan*, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

*Flanagan*, 154 F.3d at 199 n.1; *accord Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); *Gray v. Waters*, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. *Pace*, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th

Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 2001 WL 995164, slip op. at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Rose's case on February 27, 2001, the day after his conviction became final. The limitations period ran uninterrupted for

14

365 days, until February 26, 2002, when it expired. Rose had no properly filed state post-conviction or other collateral review pending during that time period.

The record reflects that he had no filings in the state courts until his post-conviction counsel moved for copies of the grand jury transcripts on January 23, 2004. This motion was filed well after the AEDPA filing period expired and otherwise did not qualify as post-conviction relief or other collateral review for tolling purposes. *See Brown v. Cain*, 239 F.3d 365 (5th Cir. Nov. 7, 2000) (Table, Text in Westlaw) (no abuse of discretion in rejecting equitable tolling for delayed receipt of transcript where transcript was not relevant to the claim raised); *Grayson v. Grayson*, 185 F. Supp.2d 747, 751-52 (E.D. Mich. 2002) (delay in receipt of transcript which was not required to file the application does not warrant equitable tolling). None of Rose's filings made in the state courts after the expiration of the AEDPA filing period affect the tolling calculation. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

Rose allowed more than one year to lapse without any properly filed and pending state proceeding and without having filed a timely federal petition for habeas corpus relief. Rose's counsel filed this federal petition on June 26, 2006, which was over four years after the AEDPA filing period expired on February 26, 2002. This petition must be dismissed as time-barred.

**RECOMMENDATION**

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Kenly Rose for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __21st__ day of January, 2009.

LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE